IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

LARUE SHEFFIELD,

    Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY; and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendants.

CIVIL ACTION NO.: 5:14-cv-38

## **O R D E R**

This matter is before the Court on Plaintiff's Objections to Defendants' Trial Exhibits. (Docs. 129, 156.) Defendants filed a Response. (Docs. 144, 154.) The Court directed the parties to advise the Court of their remaining Objections in light of the rulings on Defendants' Partial Motion for Summary Judgment and the parties' Motions in Limine. The parties responded to this Court's directive. For the reasons which follow, the Court **SUSTAINS** in part and **OVERRULES** in part Plaintiff's Objections to Defendants' trial exhibits.

## BACKGROUND

Plaintiff and his wife owned a house at 10817 Bowens Mill Road in Broxton, Georgia, which was insured by Defendant State Farm Fire and Casualty Company. Plaintiff also owned a 2005 Yamaha motorcycle, which was insured by Defendant State Farm Mutual Automobile Insurance Company. On the evening of January 18, 2013, a fire destroyed Plaintiff's home, and his wife was murdered prior to the fire. Plaintiff submitted claims with Defendants to collect proceeds from his insurance policies, per the terms of his contracts with Defendants. Defendants

have refused to pay Plaintiff's claims based on their belief that Plaintiff killed his wife and intentionally set fire to their home. Plaintiff filed this cause of action and alleged Defendants' actions in refusing to pay his claims constitute breach of contract, fraud, and bad faith. (Doc. 1.) Plaintiff further alleges that Defendants conspired with their adjusters to refuse to pay Plaintiff's claims. Id. By Order dated February 24, 2016, Chief Judge Lisa Godbey Wood granted Defendants' Motion for Partial Summary Judgment and dismissed Plaintiff's fraud, (Counts II, III, VII, and VII), conspiracy, (Counts IV and IX), and bad faith, (Counts V and X), claims. (Doc. 139.)

Defendants and Plaintiff filed several Motions in Limine seeking the exclude various categories of evidence and testimony. After conducting a hearing on these Motions, the Court entered an order granting in part and denying in part the parties' Motions. (Doc. 146.) This case is set for trial on July 12, 2016. (Doc. 135.)

## DISCUSSION

Plaintiff contends the following Objections are in need of a ruling: 2, 6, 7, 9, 10, 11, 12, 14, 19, 20, 21, 23, and 26. The Court rules as follows.

**I.     Defendants' Exhibit Number 5 (Objection Number 2)**

Plaintiff asserts that the medical record from the Coffee County Regional Medical Center Emergency Management System is incomplete, as it does not show Plaintiff was treated at the scene. Plaintiff alleges that a ruling on the admission of this exhibit should be withheld until the Emergency Medical Technicians on the scene are questioned.

Defendants maintain this exhibit is the entire record produced to them by the Coffee County Regional Medical Center Emergency Management System, which is admissible as a

business record under Rule 803(6) and as evidence to establish the absence of a regularly conducted activity under Rule 803(7).

"Hearsay" means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801. Hearsay is generally inadmissible at the trial of a case. See Fed. R. Evid. 802. However, Rule 803 provides certain exclusions to this general rule regardless of whether the declarant is available as a witness. Pertinently, Rule 803(6)(A) allows the admission of hearsay evidence if it is a record of an act, event, condition, opinion, or diagnosis if the record was made at or near the time by—or from information transmitted by—someone with knowledge. Additionally, Rule 803(7) provides that a matter is not included in a record described in Rule 803(6) if: "(A) the evidence is admitted to prove that the matter did not occur or exist; (B) a record was regularly kept for a matter of that kind; and (C) the opponent does not show that the possible source of the information or other circumstances indicate a lack of trustworthiness."

According to Coffee County emergency personnel, they were to remain on the scene of the fire until a body which was believed to be in the fire was found. No body was found, and the Coffee County Fire Department released the Emergency Medical Service personnel from the scene. There is nothing before the Court indicating that this record is incomplete or that this record is not of the type kept in the regular course of business. Thus, the Court **OVERRULES** Plaintiff's Objection. To the extent that Plaintiff wishes to establish that he was treated on the scene, he can testify to that treatment or call the Emergency Medical Technicians to testify to the same.

## II.     Defendants' Exhibit Number 64 (Objection Number 6)

Plaintiff contends that the letter from Georgia Greater Life Insurance to Plaintiff responding to his claims for his wife's insurance benefits is cumulative and improperly suggests he is a suspect in the murder investigation. Plaintiff states he does not object to a redacted version of this exhibit, which he attached to his Response to this Court's Order. (Doc. 156, p. 3; Doc. 156-1.)

Defendants assert this letter does not suggest Plaintiff is a suspect in a murder investigation, only that there is an ongoing investigation into his wife's death. Defendants aver this letter is admissible to establish Plaintiff pursued a claim for life insurance proceeds and is also admissible as a record of a regularly conducted activity.

The Court **OVERRULES** Plaintiff's Objection. This letter from the insurance company in no way suggests Plaintiff is or was a suspect in his wife's death. Rather, the insurance company informed Plaintiff the Coffee County Sheriff's office was investigating his wife's death, and the insurance company would continue checking with the Sheriff's office regarding its investigation with an eye toward the settlement of Plaintiff's insurance claim. The proof of the life insurance claim is probative of Defendants' theory that Plaintiff had a motive to murder his wife and set fire to their home.

## III.    Defendants' Exhibit Numbers 66 and 71 (Objections Numbered 7 and 9)

Plaintiff contends his examinations under oath, which Defendants took on December 19, 2013, and in March 2014 should not be given to the jury. Plaintiff asserts that there is no reason for this document to be treated any differently than a deposition, particularly in light of the dismissal of his bad faith claim.

Defendants contend this examination is a pre-litigation contractual obligation under the terms of the insurance contract when the insured has made a claim after a loss. Defendants note Plaintiff underwent two examinations and was asked about the loss and his personal and financial circumstances. According to Defendants, Plaintiff misrepresented and concealed facts material to the bases for Defendants' denial of Plaintiff's claim—claim fraud. (Doc. 154, p. 5.) Thus, Defendants assert, it is critical that the jury have the opportunity to read the actual transcripts of Plaintiff's sworn statements to allow the jury to determine whether Plaintiff's statements in these examinations under oath establish evidence of claim fraud. Defendants state they would agree to redact references in the examinations to issues which the Court rules to be inadmissible.

Federal Rule of Evidence 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "Hearsay is not admissible except as provided by" exceptions in the rules or where specifically defined as not hearsay. Fed.R.Evid. 802. For instance, former testimony, that is, a witness' testimony previously given in the same or different proceeding, is hearsay but is admissible as an exception to the rule. Fed.R.Evid. 804(b)(1). In order to be admissible under the former testimony exception, however, the declarant must be "unavailable," as that term is defined by the Rule. Certain other statements, while made out of court and offered for the truth of the matter asserted, are simply defined by the Rules as not hearsay and are therefore admissible. In particular, Federal Rule of Evidence 801(d)(2) provides, in pertinent part, that a "statement is not hearsay if . . . The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity." Royal Bahamian Ass'n, Inc.

v. QBE Ins. Corp., No. 10-21511-GOODMAN, 2010 WL 4123989, at *1–2 (S.D. Fla. Oct. 20, 2010).

The Court presumes Plaintiff will be available to testify during the trial of his case, and thus, it does not appear that his testimony during these examinations constitutes former testimony admissible under Federal Rule of Evidence 804(b)(1). Regardless, Plaintiff's examinations under oath are admissions by a party opponent and are not hearsay. Fed. R. Evid. 801(d)(2).[1]

Plaintiff argues that his statement should be "treated as a deposition" and not be introduced into evidence but instead read into the record. (Doc. 156, p. 4.) The Court presumes that Plaintiff intends to refer to Federal Rule of Evidence 613. That rule does place limitations on the introduction of extrinsic evidence of a witness's prior statement, such as a deposition transcript. However, Rule 613 explicitly states that its limitation on extrinsic evidence "does not apply to an opposing party's statement under Rule 801(d)(2)." Behler v. Hanlon, 199 F.R.D. 553, 560 (D. Md. 2001) (summarizing various forms of impeachment and explaining,"[p]rior inconsistent statements are admissible only as impeachment, unless they also qualify for admission substantively, under Rule 801(d)(1)(A) (inconsistent statement made under oath at a prior trial, hearing, court proceeding or deposition); as an admission by a party opponent under Rule 801(d)(2), or under some other exception to the hearsay rule."). Moreover, Defendants intend to use Plaintiff's prior statement to not only impeach him by his prior inconsistent statements but to also impeach him by contradiction on a non-collateral matter. Id. at 558

---

[1] Generally, an examination under oath is not the same as a deposition and that during an examination the examinee may lack certain "safeguards" available to deponents (e.g., the formal applicability of the Federal Rules of Civil Procedure). See Zavakos Enters., Inc. v. St. Paul Surplus Lines Ins. Co., 2006 WL 83502, at *6–7 (S.D. Ohio Jan. 12, 2006). Plaintiff was represented by counsel during his sworn examinations, so it is difficult to imagine what significant steps his lawyer could have taken to protect him in a deposition which he could not have taken during the examination under oath.

("evidence that impeaches by contradiction, and is not collateral, can be both substantively admissible, as well as admissible for its impeachment value."). Moreover, offers evidence that Plaintiff was dishonest at examinations that were mandated by the insurance policy, in support of its affirmative defense that Plaintiff breached the insurance policy. While the parties cited no case for this point, several state courts have determined that the insured's statements must be admitted under nearly identical operational facts. Lentz v. Metropolitan Prop. & Cas. Ins. Co., No. 9689, 2001 WL 389346, at *5 (Mass. App. Div. Apr. 9, 2001) (pre-litigation examination under oath admissible as direct evidence in support of affirmative defense that insured was untruthful during examination in breach of insurance policy); Kamenov v. Northern Assurance Co. of Am., 259 A.D.2d 958, 959 (N.Y. App. Div. 1999) (error to preclude defendant from reading examination under oath of plaintiff who made insurance claim); Alexander v. Tennessee Farmers Mut. Ins. Co., 905 S.W.2d 177, 179 (Tenn. Ct. App. 1995) ("The transcripts of examinations under oath . . . are admissible as admissions by a party opponent"); cf. United States v. Tuschman, 405 F.2d 688, 690 (6th Cir. 1969) ("Sworn representations . . . which were inconsistent with his subsequent testimony at trial, were admissible . . . as original evidence of the truth of the statements made."); McIntosh v. Eagle Fire Co. of N.Y., 325 F.2d 99, 100 (8th Cir. 1963) ("Sworn statements are clearly admissible as an admission of a party against interest, and as such, it is immaterial whether or not the witness was able to testify or had testified in the action"). Royal Bahamian, 2010 WL 4123989, at *2 n.3.

In line with these precedents, Defendants should be allowed to introduce Plaintiff's prior statements, not merely read portions of those statements to the jury. Therefore, the Court **OVERRULES** Plaintiff's Objections to these Exhibits. However, the Court agrees that Defendants must redact those portions of the statements that pertain to inadmissible topics. To

this end, Defendants are **ORDERED** to provide redacted versions of the transcripts to Plaintiff's counsel within fourteen (14) days of the date of this Order.

### IV. Defendants' Exhibits Numbered 72 and 600 (Objection Number 10)

Plaintiff contends these Exhibits contain inadmissible hearsay. Plaintiff states these exhibits correspond with his Exhibit Number 852, which will be withdrawn if his Objection is sustained or, in the alternative, will be redacted based on any stipulation that can be reached that Defendants denied his claims.

Defendants assert Exhibit Number 72 is relevant and admissible because it is the actual document Plaintiff submitted to substantiate his claim for personal property damages, and this document shows the items and values of the personal property Plaintiff contends he is entitled to recover. Defendants contend Exhibit Number 600 was prepared by their employees to show the depreciated value of items listed in Exhibit Number 72. Defendants also contend this document was prepared in the regular course of their business, has been maintained in the regular course of their business records, and is admissible under Rule 803(6). Defendants state these exhibits are relevant and admissible because Plaintiff's expert, Alan Broome, relied on these documents to calculate Plaintiff's personal property claims.

The Court **OVERRULES** Plaintiff's Objection. While Exhibit Number 600 is an updated version of Exhibit Number 72 after redaction of what looks to be Plaintiff's handwriting, it appears that both versions of this document are relevant to the value of Plaintiff's personal property claims. Additionally, Rule 803(6) allows the admission of hearsay evidence if it is a business record of an act, event, condition, opinion, or diagnosis if the record was made at or near the time by—or from information transmitted by—someone with knowledge. Of course, Defendants will have to lay the foundation at trial for the other prerequisites for the business

8

record exception including that these types of records are kept in the regular course of their business activity.

## V. Defendants' Exhibit Number 73 (Objection Number 11)

Plaintiff contends the letter Defendants wrote to Plaintiff denying his claims contains hearsay and argument regarding the facts of this case. Additionally, Plaintiff asserts this letter is relevant only to his no longer pending bad faith claim, so it would be improper for this letter to go to the jury.

Defendants respond that this letter is admissible to establish when, how, and for what reasons Defendants gave notice to Plaintiff of the decisions to deny Plaintiff's claims.

The Court **SUSTAINS** in part and O**VERRULES** in part Plaintiff's Objection. Defendants are permitted to present this letter to the jury. However, the contents of this letter must be greatly redacted. Defendants shall only present the first page of the letter and the first three lines of the second page of this letter. In other words, Defendants must redact all content after the phrase "other misrepresentations." These redactions will reduce the risk of undue prejudice to Plaintiff by not allowing the arguments of Defendants' counsel to be introduced in documentary form while allowing Defendants to present when it denied Plaintiff's claim and the general reasons for that denial.

## VI. Defendants' Exhibit Number 160 (Objection Number 12)

Plaintiff objects to admission of the Report of Don Allen, an Investigator with the Georgia State Fire Marshal's Office, "as to the hearsay conversation with Christopher Sheffield", Plaintiff's son. Plaintiff contends the hearsay statements cannot be made admissible because they were contained in a governmental report. Plaintiff states Christopher Sheffield has testified that the statements in this report attributed to him are inaccurate.

Defendants contend Mr. Allen's Report is admissible in its entirety because he is an expert in fire investigations and regularly relies on information provided by witnesses that is relevant to his investigation. Defendants also contend Mr. Allen's report is admissible as a record of a regularly conducted activity. Moreover, Defendants assert this report can be used for impeachment purposes, as they anticipate Christopher Sheffield will testify contrary to the statement he made to Mr. Allen on the night of the fire.

The Court **SUSTAINS** Plaintiff's Objection. In this Report, Mr. Allen summarizes information he gathered from other individuals including a conversation he had with Christopher Sheffield. It is not clear that Allen came to any expert conclusions in his Report. Allen does state that "it was determined that the fires [sic] origin was not located on the ground floor . . . ." However, it is not clear if Allen came to this conclusion or someone else. Moreover, even if Allen made any expert conclusions, it does not appear that he relied upon the hearsay statements of Christopher Sheffield, in reaching that conclusion. He does not cite Christopher Sheffield's statements in support of that conclusion. Even if he had relied upon those statements, Defendants have not established that experts in Allen's particular field would reasonably rely on those kinds of statements in forming an opinion. Fed. R. Evid. 703. Regardless, the probative value in helping the jury evaluate any opinion by Allen does not substantially outweigh the hearsay statements' prejudicial effect. Id.

Additionally, Defendants must establish an exception for each level of hearsay in the Report. Fed. R. Evid. 805. Consequently, Defendants cannot rely upon the business record or public record exception to introduce hearsay statements contained in the Report, including those attributed to Christopher Sheffield. (Doc. 146, p. 11 ("'It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted

but that statements made by third persons under no business duty to report may not.'")); see also, United Technologies Corp. v. Mazer, 556 F.3d 1260, 1278 (11th Cir. 2009) (holding hearsay within a government report inadmissible under Rule 803(6) and Rule 803(8)) (quoting United States v. Pazsint, 703 F.2d 420, 424 (9th Cir. 1983)). Therefore, "'[p]lacing otherwise inadmissible hearsay statements by third-parties into a government report does not make the statements admissible.'" Id. (quoting Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt. Corp., 407 F. Supp. 2d 1304, 1315 n.2 (S.D. Fla. 2005); see also Goodman v. Kimbrough, 718 F.3d 1325, 1333 (11th Cir. 2013) ("To boot, all of this ignores the fact that [inmate's] statements, included as part of the Sheriff's Department investigative report, are rank hearsay. Even accepting that the conclusions drawn in the Report itself are admissible under the public records exception to the hearsay rule, see Fed. R. Evid. 803(8), the statements of third-parties within that report are double hearsay not within any exception to the rule."); Fed. R. Evid. 803, advisory committee notes, 1972 Proposed Rules (discussing a police report which contains information obtained from a bystander and explaining that officer qualifies as acting in the regular course of business but the bystander does not).)

If Defendants seek to introduce this Report at trial, they must redact Allen's conversation with Christopher Sheffield. This redaction should begin on page 5 with the phrase "At one point" and continue through the phrase "I informed the agent in charge and." In other words, the phrase "we took steps" and all information after than phrase need not be redacted.

That being said, Defendants may question Christopher Sheffield regarding previous statements he made which differ from any testimony he provides in an effort to impeach Christopher Sheffield at trial. Whether Defendants may introduce extrinsic evidence as part of

11

that impeachment effort depends on Christopher Sheffield's testimony and the requirements of Federal Rule of Evidence 613.

## VII. Defendants' Exhibit Number 601 (Objection Number 14)

Plaintiff also objects to the introduction of Defendants' Exhibit 601, which is a demonstrative aid and which does not accurately depict the amount of woods and brush between his mobile home and his residence that was burned. Plaintiff contends numerous aerial photographs were taken within a day of the fire and provide a much more accurate depiction of the woods and brush, and these photographs are his Exhibits Numbered 16 through 55. Plaintiff asserts the demonstrative aid contained in Exhibit 601 is not the best evidence and contains inadmissible hearsay.

Defendants assert that their representative, Hal Parrish, prepared this demonstrative aid to assist the jury in understanding the layout of the insured dwelling and its relationship to the mobile home, the driveway, Bowens Mill Road, and the surrounding vicinity. Defendants allege this exhibit clearly states that the diagram is not drawn to scale and only depicts the relationship of objects on the property and in the area. Defendants assert Mr. Parrish made measurements and will testify at trial regarding those measurements.

Based on Plaintiff's representation that aerial photographs of the area were taken and Defendants' lack of opposition to the introduction of those photographs, the Court **SUSTAINS** Plaintiff's Objection. "Demonstrative devices" can be used "to aid the jury's comprehension". Onstott v. Sec'y, Dep't of Corr., No. 8:12-cv-2695-T-17EAJ, 2015 WL 1155206, at *9 (M.D. Fla. Mar. 12, 2015). However, this drawing will not assist the jury's comprehension of Mr. Parrish's testimony. Rather, given the admitted inaccuracies in this drawing, it would only confuse and mislead the jury. Instead, Mr. Parrish should use the aerial photographs of this area

and his measurements to explain to the jury the relationship of the mobile home and residence and general area.

**VIII. Defendants' Exhibit Number 792 (Objection Number 19)**

Plaintiff contends the GBI chain of custody report makes it appear that he is a suspect in his wife's death and the fire. Plaintiff asserts the chain of custody can be stipulated to outside the presence of the jury.

Defendants aver there is no mention of Plaintiff or any other named suspect in this document. Defendants allege this document is admissible as a business record or as a record of regularly-conducted activity because it is a listing of all physical evidence collected from the crime scene for analysis.

The Court **OVERRULES** Plaintiff's Objection. This document in no way mentions Plaintiff or any person other than his wife and the persons taking custody of this evidence. Further, to the extent this document contains any hearsay, it appears it is admissible pursuant to Rules 803(6) and (8).

**IX. Defendants' Exhibits Numbered 799–805, 807–987, and 989–1057 (Objection Number 20)**

Plaintiff asserts the photographs were taken after a search of his truck, and these photographs make it appear that he was a suspect in his wife's death and the fire at this residence. (Doc. 156, p. 6.) Plaintiff further states that the photographs have no probative value. Id. Defendants state these photographs are fair depictions of what fire investigators observed at the fire scene while investigating a suspicious fire loss and are relevant and admissible. (Doc. 154, p. 10.)

The Court **OVERRULES IN PART AND SUSTAINS IN PART** Plaintiff's Objection. These photographs do not violate the Court's ruling that "Defendants are not permitted to

introduce evidence that Plaintiff has been or still may be a suspect in the arson and/or murder." (Doc. 146, p. 5.) The photos themselves do not directly identify Plaintiff as a suspect, and any implication that these photos pose to that end is too attenuated to violate the Court's ruling.[2] Nevertheless, the overwhelming majority of these 259 photographs appear to have absolutely no probative value. Many are duplicative and do not appear to depict any pertinent evidence (such as Plaintiff's mobile phone) that was found in Plaintiff's truck. Defendants have not explained how the general condition of Plaintiff's truck has any bearing on Defendants' theory of the case. Thus, Defendants should only offer those photos that are relevant to the issues raised by Plaintiff's claims and Defendants' defenses.

## X.  Defendants' Exhibits Numbered 1058 and 1058a (Objection Number 21)

Plaintiff asserts that the photograph of his truck with security tape over it and Anthony Banks' *curriculum vitae* make it appear that Plaintiff has been investigated. Plaintiff also asserts that, should the Court rule these exhibits are admissible, foundational support for these exhibits could be stipulated.

Defendants note the photograph of Plaintiff's truck does not imply Plaintiff was being investigated or that the fire loss was investigated any differently than any other fire loss. Further, Defendants assert that Banks' *curriculum vitae* sets forth the bases for his expert qualifications to investigate cell phones, tablets, and other electronic devices found at the loss site.

The Court **SUSTAINS** Plaintiff's Objection to these Exhibits. Exhibit 1058, the photo of Plaintiff's truck with crime scene tape strewn across it crosses the line set by the Court's ruling

---

[2] However, the Court cautions Defendants on its efforts to introduce literally hundreds of exhibits from law enforcement's investigation tied to Plaintiff alone (such as 258 pictures of Plaintiff's truck), many of which have little, if any value to the issues at hand. Through the cumulative presentation of this evidence, Defendants could cross the line set by the Court which could, among other things, trigger Plaintiff's ability to introduce evidence that he has not been arrested for, much less convicted of, any crime in relation to the facts of this case. (Doc. 146, pp. 4–5.)

that "Defendants are not permitted to introduce evidence that Plaintiff has been or still may be a suspect in the arson and/or murder." (Doc. 146, p. 5.) This photo has little if any probative value as there does not appear to be any issue as to whether Plaintiff's truck was altered or tampered with after the fire. Further, should Defendants need this document to lay the foundation for some other evidence or establish a chain of custody, Plaintiff has indicated a stipulation can be reached to that end.

Defendants argue that Exhibit 1058A, Banks' *curriculum vitae*, is admissible hearsay under Federal Rule of Evidence 702. (Doc. 154, p. 11.) Rule 702, the general rule on the admissibility of expert opinion testimony, does not set forth an exception to the inadmissibility of hearsay. While Rule 703 allows, in certain situations, the expert to make the jury aware of facts and data that the expert relied upon in forming his opinion, this rule does not encompass *curriculum vitae*. Thus, several courts have recognized that, while parties often stipulate to the admissibility of *curriculum vitae*, these documents are technically inadmissible hearsay. See, e.g., Mahnke v. Washington Metro. Area Transit Auth., 821 F. Supp. 2d 125, 153 (D.D.C. 2011); Sutfin v. City of Bono, Ark., No. 3:07-CV-00124-WRW, 2009 WL 1955438, at *1 (E.D. Ark. July 6, 2009); Alexie v. United States, No. 3:05-CV-00297 JWS, 2009 WL 160354, at *1 (D. Alaska Jan. 21, 2009); Lischner v. Upper Darby Twp., No. CIV.A. 05-4546, 2007 WL 2032923, at *10 (E.D. Pa. July 11, 2007); Hillman v. U.S. Postal Service, 171 F. Supp. 2d 1174, 1176 (D. Kan. 2001); 5 Handbook of Fed. Evid. § 702:2 (7th ed. 2015) ("Qualifying the witness as an expert should be done on direct examination, and not by the introduction of the expert's curriculum vitae, which in fact is inadmissible hearsay."). Here, the parties have not reached a stipulation regarding the admissibility of Banks' *curriculum vitae*. Thus, Defendants cannot

introduce this document at trial and must elicit any pertinent information contained in the document by way of direct testimony.

**XI.     Defendants' Exhibit Number 1059 (Objection Number 23)**

Exhibit Number 1059 contains a summary of text messages between Plaintiff and David Arenett. Plaintiff objects to the admission of this exhibit because it contains off-color jokes, some of which can be deemed political and/or racial in nature, and have no probative value. Plaintiff alleges this exhibit may be prejudicial.

Defendants maintain these documents were part of the GBI investigative materials for purposes of completeness, and GBI witnesses will testify regarding what was discovered on Plaintiff's cell phone. Defendants contend these documents reflect that the relationship between Plaintiff and Dr. David Arnett is much more than that of a doctor-patient and may be used for impeachment purposes.

The Court **SUSTAINS** Plaintiff's Objections. These records are largely duplicative of each other and have little, if any, probative value as to of any issue before the Court. Merely because a document was within an investigator's file does not make it relevant. In addition, as to any probative information found on Plaintiff's phone, Defendants state that GBI witnesses will testify about what was discovered on the phone. Accordingly, this documentary evidence would be cumulative. Given the nature of some of these messages, it appears Defendants primarily seek to introduce these messages to embarrass and unduly prejudice Defendant.

Defendants argue that the evidence could be used to impeach Arnett's testimony by showing bias. "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness testimony." United States v. Abel, 469 U.S. 45, 52, 105 S.Ct.

465, 83 L.Ed.2d 450 (1984). "Nevertheless, proof of bias must be relevant and is inherently subject to the same limitations that accompany the introduction of other evidence." United States v. Jones, 479 F. App'x 874, 877 (11th Cir. 2012) (citing United States v. Arias–Izquierdo, 449 F.3d 1168, 1178 (11th Cir. 2006) (noting limitations during cross-examination for bias in the context of "confusion of the issues or interrogation that is repetitive or only marginally relevant"); United States v. Novaton, 271 F.3d 968, 1006 (11th Cir.2001) (noting that cross-examination of a witness regarding potential bias must be relevant). Moreover, Rule 608(b) does not prohibit a party from using extrinsic evidence for to show bias.

Defendants argue that these messages show that "the nature of the relationship between the Plaintiff and Dr. Arnett is much more than doctor-patient . . . ." (Doc. 154, p. 11.) However, Defendants can show that Plaintiff and Arnett have a close relationship without introducing this unduly prejudicial Exhibit. For instance, Defendants can ask Plaintiff and Arnett whether they frequently communicate with each other. Additionally, should Plaintiff and Arnett deny that they have a close relationship, Defendants can then revisit the use of this Exhibit (perhaps with the unduly prejudicial messages redacted) with the Court. However, at this stage, this Exhibit is only marginally probative of Arnett's bias which is itself an issue of limited relevance. That marginal relevance is outweighed by the unduly prejudicial nature of this Exhibit.

**XII. Defendants' Exhibits Numbered 1801–1824 (Objection Number 26)**

Finally, Plaintiff contends the photographs in these Exhibits, which show his truck surrounded by evidence tape and being towed, make it appear that he was a suspect. Defendants state the impounding and investigation of the truck located at the scene of a suspicious fire does not indicate Plaintiff was a suspect.

The Court **OVERRULES IN PART AND SUSTAINS IN PART** Plaintiff's Objection for the same reasons stated as to Objection Number 20. These photographs do not violate the Court's ruling that "Defendants are not permitted to introduce evidence that Plaintiff has been or still may be a suspect in the arson and/or murder." (Doc. 146, p. 5.) Unlike Exhibit 1058, the crime scene tape in these photos is not strewn across Plaintiff's truck. Thus, the photos themselves do not directly identify Plaintiff as a suspect, and any implication that these photos pose to that end is too attenuated to violate the Court's ruling.[3]

Nevertheless, these photographs appear to have no probative value. Many of the photos are duplicative. Further, the photos depict the exterior of Plaintiff's truck and do not appear to depict any pertinent evidence (such as Plaintiff's mobile phone) that was found inside Plaintiff's truck. Defendants have not explained how the general condition of the exterior of Plaintiff's truck has any bearing on Defendant's theory of the case. Thus, Defendants should only offer those photos that are relevant to the issues raised by Plaintiff's claims and Defendants' defenses.

## CONCLUSION

For the reasons stated above, the Court **SUSTAINS** in part and **OVERRULES** in part Plaintiff's Objections to Defendants' trial exhibits.

**SO ORDERED**, this 23rd day of June, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[3] However, the Court again cautions Defendants on its efforts to introduce literally hundreds of exhibits from law enforcement's investigation tied to Plaintiff alone.